IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL MCCLOSKEY,

                        Plaintiff,           Case No. 3:09 CV 1273

-vs-

                                       MEMORANDUM OPINION
OFFICER THOMAS WHITE, et al.,        AND   ORDER

                       Defendant.

KATZ, J.

This matter involves Plaintiff Michael McCloskey's civil rights lawsuit against Defendants Village of Ottawa Hills ("Ottawa Hills") and Thomas White, a former Ottawa Hills police officer. White shot Plaintiff on May 23, 2009, an action for which White was convicted of felonious assault. Plaintiff subsequently sued Ottawa Hills and White pursuant to 42 U.S.C. §§ 1983, 1988, and pursuant to the Fourth and Fourteenth Amendments to the Constitution. Currently pending are Plaintiff's motion to compel non-party Ohio State Highway Patrol ("OSP") to produce certain Law Enforcement Automated Data System ("LEADS") reports, (Doc. 138), OSP's motion for a protective order, (Doc. 144), Plaintiff's motion to compel Ottawa Hills to produce surveillance records, (Doc. 151), and Plaintiff's motion for a protective order to preclude certain questioning during Plaintiff's second deposition. (Doc. 150).

For the reasons stated herein, Plaintiff's motion to compel production of LEADS data is denied, OSP's motion for a protective order is granted, Plaintiff's motion to compel production of surveillance records is granted in part and denied in part, and Plaintiff's motion for a protective order is denied.

**I. LEADS Reports**

LEADS is a multipurpose computer system maintained by OSP that enables authorized users to "access Ohio Bureau of Motor Vehicle and National Criminal Information Center ("NCIC") records." (Doc. 144 at 11). LEADS users can also employ the system to "run a suspect in a criminal case, a driver stopped for a traffic offense, an at-fault or not-at-fault motorist involved in a traffic crash, or to radnomly run a license plate." (Doc. 144 at 2). A record of any LEADS query, as well as the information provided in response, can be produced by a "LEADS scan report." (Doc. 144 at 2, 11).

Plaintiff alleges that certain members of the Lucas County, Ohio Prosecutor's Office provided information that suggests the Ottawa Hills Police Department illegally accessed Plaintiff's LEADS information more than thirty times in the months preceding the shooting. Under Plaintiff's theory of the case, Defendants accessed the information "without any investigatory reason or purpose," and used the information "to impermissibly stalk Plaintiff because they did not want Plaintiff to reside in the Village of Ottawa Hills." (Doc. 138 at 8). At deposition, Ottawa Hills police officers admitted they accessed Plaintiff's LEADS information, but deny that they ever did so illegally.

On September 27, 2011 Plaintiff issued OSP a subpoena demanding production of "all LEADS reports ran by the Ottawa Hills Police Department- ALL USERS, between the time frame of January 1, 2007 and December 1, 2009." (Doc. 138-1). On October 6, 2011 OSP sent Plaintiff a letter objecting to the subpoena on grounds that production of the requested information would violate Ohio confidentiality laws and constitute a fifth-degree felony. (Doc. 138-2). Plaintiff filed the instant motion to compel production on November 1, 2011, (Doc. 138), and OSP responded with a motion for a protective order on November 16, 2011. (Doc. 144).

2

OSP cites a number of confidentiality statutes protecting the requested information. The Ohio Administrative Code specifically restricts use and dissemination of LEADS data to "authorized users," which generally include only "duly authorized law enforcement and/or criminal justice agencies for the administration of criminal justice," and in any event do not include private civil litigants. (Doc. 144 at 4) (citing OHIO ADMIN. CODE 4501:2-10-01; 2-10-03). Moreover, 28 C.F.R. § 20.33(A) forbids disclosure of the FBI's NCIC data, which is contained in the LEADS system. Ohio law also makes it a fifth degree felony to disseminate any LEADS data "without the express or implied consent of the chair of the LEADS steering committee (the superintendent of the Patrol)." (Doc.144 at 5) (citing OHIO ADMIN. CODE 4501:2-10-06). OSP also stresses that Plaintiff's subpoena demands LEADS reports for all data accessed by eighteen authorized users over a two year period, which would necessarily require disclosure of every social security number, license plate number, driver's license number, and NCIC record reviewed by those users.

Conversely, Plaintiff cites a number of cases holding that confidentiality provisions contained in a statute do not designate information as privileged under the Federal Rules of Civil Procedure absent a clear legislative intent that such information be privileged. (Doc. 138 at 6) (citing *Baldridge v. Shapiro*, 455 U.S. 345, 361 (1982)). Plaintiff therefore argues that OSP has not asserted a federally recognized privilege and must produce the information pursuant to FED. R. CIV. P. 26(b)(1). Moreover, Plaintiff asserts that a 1996 Ohio Attorney General Advisory Opinion allows for dissemination of LEADS data to private individuals. (Doc. 151 at 4) (citing Att'y Gen. Op. No. 96-049 (1996), Doc. 151-1).

3

This Court believes that the confidentiality statutes and regulations cited by OSP sufficiently indicate an intent that the LEADS data requested by Plaintiff be privileged, and OSP is therefore not required to produce it.

Plaintiff's reliance on the Ohio Attorney General's Advisory Opinion, *supra*, does not change this analysis. First, the circumstances contemplated by the Advisory Opinion were limited to providing a criminal defendant with his criminal record in a criminal proceeding. Nowhere did the Advisory Opinion contemplate that LEADS data would be disclosed in a civil matter. Second, the Advisory Opinion did not allow for dissemination of LEADS data directly to the private individual in that case, as Plaintiff demands be done here. Instead, it provided that LEADS data could be given to a county humane society prosecuting attorney who was part of an "authorized criminal justice agency" as defined by the LEADS regulations (Doc. 151-1 at 3). The prosecutor was in-turn permitted to provide the data to the criminal defendant. Thus, the Advisory Opinion does not suggest that LEADS data can be disseminated directly to a private civil litigant, but instead reinforces the requirement in OHIO ADMIN. CODE 4501:2-10-06 that LEADS data be restricted to use by "law enforcement and/or criminal justice agencies for the administration of criminal justice."

Because the LEADS data requested by Plaintiff is privileged, and for good cause shown, Plaintiffs motion to compel production of the LEADS data is denied, and OSP's motion for a protective order is granted.

## II. Surveillance Records

On October 4, 2011 Plaintiff served on Defendants a request for "[a]ny and all unredacted surveillance records including reports, video tapes, audio tapes, photographs and any other

4

recordings of Plaintiff, Michael McCloskey, requested or in the possession of Defendants." (Doc. 158-2 at 4). Defendants deny the existence of such surveillance, and alternatively assert that if any surveillance exists or is created, it is privileged under the work product doctrine.

The work product doctrine protects documents and tangible items prepared by or for an attorney in anticipation of litigation. *See In re Antritrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986). This includes surreptitious investigative videotape surveillance. *See Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145 (S.D. Ind. 1993) (defendant employer's videotape surveillance protected by work product doctrine where created in anticipation of employee injury litigation), and *Ward v. AT Systems, Inc.*, 2008 U.S. Dist. LEXIS 67990 (E.D. Pa. Sept. 9, 2008) (defendant bank's surreptitious videotape surveillance protected by work product doctrine where created in anticipation of plaintiff customer's injury lawsuit). Thus, to the extent that any putative surveillance evidence in this case was created in anticipation of litigation, Defendants' assertion of the doctrine is correct and they are not required to produce the evidence.[1]

Conversely, to the extent that putative surveillance evidence was not created in anticipation of litigation, Defendants' assertion of the doctrine is unavailing. For example, work product created for ordinary business purposes is not privileged. *See North Shore Gas Co. v. Elgin, Joliet & Eastern Ry. Co.*, 164 F.R.D. 59, 61 (N.D. Ill. 1995). This includes police reports and surveillance video created during routine traffic stops and during other routine law

---

[1] As conceded in Ottawa Hills' brief, (Doc. 158 at 2-3; Doc. 158-1 at 3), Defendants may not wait until trial to provide Plaintiff with otherwise privileged work product that Defendants will introduce at trial. Defendants shall produce such work product to Plaintiff two-weeks to thirty-days before trial begins.

enforcement activities. Should such surveillance exist, or be created in the future, it is not protected by the work product doctrine and Defendants are hereby ordered to produce it.[2]

### III. Plaintiff's Deposition

On November 1, 2010 Plaintiff was deposed on the issue of damages. Facing a second deposition on the issue of liability, Plaintiff requests a protective order to prevent duplicative questioning and harassment. Specifically, Plaintiff claims to have been "grilled" during his first deposition on such topics as education, residency, work history, IRS income reporting habits, and drug use. Plaintiff insinuates that defense counsel engaged in abusive conduct, and Plaintiff therefore requests a protective order for the second deposition.

This Court, which has broad discretion to determine the proper scope of discovery, *see Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998), has not seen any evidence of improper conduct, let alone any conduct warranting a protective order. Plaintiff's request is denied.

### IV. Conclusion

For the reasons stated herein, Plaintiff's motion to compel production of LEADS data is denied, (Doc. 138), OSP's motion for a protective order is granted, (Doc. 144), Plaintiff's motion to compel production of surveillance records is granted in part and denied in part, (Doc. 151), and Plaintiff's motion for a protective order is denied. (Doc. 150).

---

[2] Defendant's reference to *Fisher* and *Ward*, *supra* does not alter the Court's analysis. In both cases, the applicability of the work product doctrine was not at issue because it was conceded that the surveillance videotapes were prepared in anticipation of litigation. Instead, *Fisher* and *Ward* analyzed requirements to produce evidence notwithstanding the applicability of the work product doctrine. *See Fisher*, 152 F.R.D. at 149-50 (examining discoverability of non-evidentiary work product); *Ward*, 2008 U.S.Dist. LEXIS 67990, at *7-*8 (examining discoverability of work product based on substantial need).

IT IS SO ORDERED.

    S/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE